UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAVIN MAURICE RHODES,<br><br>Plaintiff,<br><br>v.<br><br>PETER C. SWARTH, et al.,<br><br>Defendants. | Case No. CV 17-5211-JGB (KK)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.

## **INTRODUCTION**

Plaintiff Kavin Maurice Rhodes ("Plaintiff"), a state inmate proceeding pro se and in forma pauperis, filed a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") Complaint pursuant 18 U.S.C. §§ 1961-1968 against numerous defendants[1] ("Defendants") in their individual capacities. ECF Docket

---

[1] The following named defendants are hereinafter collectively referred to as "Defendants": Peter C. Swarth, Antonio J. Bestard, Hon. Sam Ohta, C. Rios, R. Lazono, Babcock, Leyva, Ta'amillo, Tinsley, Santiago, Lt. C. Lesniak, Bowen, Lt. Ostrander, Lt. Fitzpatrick, Sgt. J. Anderson, Lt. P. Denny, Sgt. P. Chanelo, Sgt. Martinez, Suzzane B. Anteley, Joshua D. Mendelsohn, Jeffery Beard, Christian Pfeiffer, Robert A. Barton, Scott Kernan, Kathleen Allison, Sgt. Rodriguez, Lt. Sandoval, Lt. M. Stewart, R. Sullivan, Lt. Betzinger, B. Cope, Hunter, B. Valdez, Sgt. Fehlman, C. Wincewicz, Sgt. Nuckles, V. Benivadas, Bermudez, P. Melton, Sgt. Anderson, E. Williams, B. Howe, S. Mendoza, A. Benafield, M. Voong, Veldez, Sgt. Davis, Dyer, C. Gonzales, N. Bramucci, Noah P. Hill, Idan Irvi, J.D. Smith, B. Buckhorn, J. Ryan, C.E. Ducart, C. Parry, R. Stevenson, and Officer and

No. ("Dkt.") 1. As discussed below, the Court dismisses the Complaint with leave to amend.

## II.
## **ALLEGATIONS IN COMPLAINT**

On June 26, 2017, Plaintiff constructively filed[2] a civil RICO Complaint against Defendants. See Dkt. 1, Compl. at 1. The Complaint appears to sue over sixty defendants in their individual capacities for "violations of Plaintiff's constitutional and statutory rights under the color of state law." Id. at 2-7, ¶¶ 4-63.

While the specific allegations and details of the Complaint are indecipherable, Plaintiff alleges a wide-ranging civil RICO conspiracy among various individuals, including state court judges, private attorneys, prosecutors, California Department of Corrections and Rehabilitation officials, correctional officers, and law librarians. Plaintiff alleges Defendants have acted "because of Plaintiff's race as African American . . . [to] conspire to deprive Plaintiff of his constitutional rights . . . for the purpose of preventing any form of financial recovery for 29 years of unjust incarceration, for a crime in which Plaintiff is actually innocent of." Id. at 7.

In his request for relief, Plaintiff "vehemently ask[s]" the Court to "refer this matter to the U.S. Attorney General's Office, for investigation into the propriety of criminal prosecutions of all named defendants for their racketeering activities." Id. at 47. Plaintiff also seeks injunctive relief and damages. Id. at 47-48.

///
///

---

Sgt. John Does. The Court adopts the spelling of Defendants' names from the Court's CM/ECF docketing system.

[2] Under the "mailbox rule," when a pro se inmate gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010).

2

# III.
# STANDARD OF REVIEW

As Plaintiff is proceeding in forma pauperis, the Court must screen the Complaint and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

In determining whether a complaint fails to state a claim for screening purposes, the Court applies the same pleading standard from Rule 8 of the Federal Rules of Civil Procedure ("Rule 8") as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012). Under Rule 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and the Court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If the court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

///
///
///
///
///
///
///

# IV.

# DISCUSSION

## A. THE COMPLAINT FAILS TO COMPLY WITH THE PLEADING REQUIREMENTS OF RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE

### (1) Applicable Law

Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). "[T]he 'short and plain statement' must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. L.A. Cty., 216 F.3d 837, 841 (9th Cir. 2000).

As the Supreme Court has held, Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Plaintiff's complaint must contain enough facts to "state a claim to relief that is plausible on its face," allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Complaints that are "argumentative, prolix, replete with redundancy, and largely irrelevant" and that "consist[] largely of immaterial background information" are subject to dismissal under Rule 8. McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996). A complaint may be dismissed for violating Rule 8 even if "a few possible claims" can be identified and the complaint is not "wholly

without merit." Id. at 1179 (stating Rule 8's requirements apply "to good claims as well as bad"). Complaints that fail to comply with Rule 8 "impose unfair burdens on litigants and judges" who "cannot use [such] complaint[s]" and "must prepare outlines to determine who is being sued for what." Id. at 1179-80.

**(2) Analysis**

Here, Plaintiff's Complaint is replete with incomprehensible, repetitive, and conclusory allegations.

The Complaint is forty-eight pages in length and reads much like a stream of consciousness. For example, in paragraph 72, Plaintiff alleges:

> And on March 6, 2014, the very same date that defendant No[]a[h] P. Hill made his appearance as counsel of record (with whom Plaintiff has a long history with sending correctional officers to do his bidding under the guise of 602 retaliation) in the companion case Rhodes v. Biter, No. 14-70204 (9th Cir. 2014), reflecting all of the evidence that [] had been suppressed during Plaintiff's criminal trial, that only came to light as a direct result of the previous RICO suit mentioned ante, at ¶ 68.

Compl. at 9, ¶ 72. Similarly, in paragraph 77, Plaintiff alleges:

> Defendant Stewart was visually taken by Plaintiff's insight, that it was in fact defendant Hill, behind that scheme, to have Plaintiff thrown in the hole and steal all of his legal documents, to try and defeat Plaintiff in the case Rhodes v. Biter, mentioned above. The same ploy Hill used constantly in the years 1997-2003, when he was counsel of record in Plaintiff's first round of Federal Habeas Corpus, in Rhodes v. Rowe, Case No. CV-97-7416-LGB (BQR).

Id. at 10, ¶ 77.

In addition, there are random, unsupported, and implausible allegations and commentary throughout the Complaint. For example:

6

- "That is, defendants ha[ve] implemented a long standing State wide policy, to take unfair advantage of the fact that 99.999‰ of prisoners are suffering from <u>Stockholm Syndrome</u> . . . ." <u>Id.</u> at 15, ¶ 98.
- "However (if memory serves correct) the very next day, on or about August 14, 2014, prison officials including Bowen, completely destroyed the entire law library, breaking all of the computers, and copy machine, to prevent Plaintiff from filing a 'Reply' to Hill's Opposition to file a second or successive federal habeas corpus petition." <u>Id.</u> at 13, ¶ 89.
- "Plaintiff contends, that defendant Biter 'Warden's Chronological Log of Significant occur[re]nces regarding inmates and staff or other events about which Facility Management should be informed. A Log that each Warden shall maint[a]in pursuant to DOM § 5106.1, will duly reflect that in the years prior to Plaintiff's initiation of the previous RICO suit named above, no lethal force had been used against any prisoners at Kern Valley State Prison, on either Facilities A or B, to quell fist fights, even in incidents, w[h]ere a single prisoner, was being attacked by multiple prisoners." <u>Id.</u> at 17, ¶ 102.
- "[B]efore she alleged[ly], committed suicide, that which Plaintiff contends is more sinister, and she was perhaps murdered by defendant Ohta, before she could inform that it was he, whom put her up to intercepting Plaintiff's legal documents, to deprive Plaintiff of his access to the post conviction procedure." <u>Id.</u> at 12, ¶ 84 (second alteration in original).
- "And as part of that wicked scheme, prison officials on Facility-A, during this same temporal period, as part of their conspiratorial cover-up scheme, were simultaneously choreographing a ruse to have its Peace Keepers, to attack an Hispanic prisoner, whom they shot and killed because of an alleged fist fight, to make it appear, that after having shot and killed Plaintiff, in an event stage[d] by the defendants that such events, were a common occur[re]nce." <u>Id.</u> at 16-17, ¶ 101 (first alteration in original).

7

- "And further sinister, is the fact that Plaintiff is not informed based upon information and belief, that the States prosecution star witness, 'Hyron Tucker,' whom the State paid, and concealed those payments to Tucker, resulting in Plaintiff's wrongful conviction, has also at this late juncture, reported to have died, mysteriously, during the time period that defendant Hill, was [o]pposing counsel for the State, during Plaintiff's first federal habeas corpus proceedings. A pattern of mysterious deaths, contemporaneous, with Plaintiff's legal proceedings, for which there is no statute of limitations on murder, that must also be investigated by the U.S. Department of Justice." Id. at 19, ¶ 109.
- "On August 24, 2016, Plain[t]iff arrived at Pelican Bay State Prison, and was introduced into a prison Administrative environment where the guards are utt[]erly out of control, that can only be depictured as akin to is Hollywood television fictional counterpart 'Wayward Pines,' where the show of force pales beyond the borders of the obscene." Id. at 35, ¶ 170.
- "Additionally, the actions of December 6, 2015, by prison officials at the behest of defendant Ohta and Swarth, is akin to the fable 'Cats Paw,' by Aes[o]p[], put into verse by La Fontain[e] in 1679." Id. at 28, ¶ 143.
- "Defendants Hill and Irv[i] ha[ve] committed the act of Mail and Wire Fraud, in the attempt to try and influ[en]ce that Court to arrive at an improper result, upon its further false premise, 'abuse of the writ.' This act of Mail and Wire Fraud, is another reminder of the Fable 'Cats Paw,' mentioned above at ¶ 143." Id. at 45, ¶ 205.
- Immediately following "Predicate Act Forty-Two" in the section for Relief, Plaintiff writes, "In summation, 1 Corinthians, 1:27, Job, 5:12-13." Id. at 48.

The Complaint also repeats many of the same facts. For example, in paragraph 76, Plaintiff states, "And it was Plaintiff's belief, that defendant Noah P. Hill, was behind the scenes ordering that attack on Plaintiff, under the guise of an

investigation of an administrative appeal to place Plaintiff in the hole, to steal all of his legal documents." Id. at 10, ¶ 76. In paragraph 89, Plaintiff then states, "Ergo, the attempted scheme by defendants Stewart and Hill, on March 6, 2014, to place Plaintiff in the hole, to confiscate all of his legal documents, as described ante, at ¶¶ 72-80." Id. at 13, ¶ 89. In paragraph 132, Plaintiff writes, "Plaintiff further contends that, his prison records will duly reflect that it is a pattern, and a long standing scheme begin[n]ing with defendant Hill, to set up cell fights to distract Plaintiff, and/or place Plaintiff in the hole a wicked scheme to steal all of Plaintiff's legal documents, or to destroy his typewriter." Id. at 24, ¶ 132. In paragraph 134, Plaintiff also states, "It is noteworthy to point out that, the false weapons charges to have Plaintiff thrown in the hole to steal all of his legal documents." Id. at 24, ¶ 134.

Similarly, in paragraph 94, Plaintiff writes, "Plaintiff filed a complaint with the California State Bar against defendant Hill, and Hill thereafter, perfected a bait-and-switch scheme, whereby, Hill gave the appearance of voluntarily removing himself as counsel of record, and substituted himself, with current counsel of record, defendant Ivan Irvi, in the pending federal habeas corpus petition, Rhodes v. Pfeiffer, Case No. cv-14-07687-JGB(DTB), in which Hill, as the ghost-writer for Irvi; and both Hill and Irv[i], has continued to conspire with prison officials at Pelican Bay Prison . . . ." Id. at 14, ¶ 94. These allegations are then repeated in paragraph 204, which states, "For example, on October 11, 2016, defendant Hill, as the ghost-writer for Irv[i], filed CDCR's Answer to Plaintiff's Federal Habeas Corpus Petition, Rhodes v. Pfeiffer, Case No. cv-14-07687-JGB(DTB) . . . ." Id. at 44, ¶ 204.

Finally, the Complaint is largely conclusory. For example, paragraph 70 states "Plaintiff contends that Lesniak's misconduct is violative of the First Amendment right of Access to the Courts, and the Eighth Amendments ban on cruel and unusual punishments. And RICO." Id. at 8, ¶ 70. In paragraph 134,

9

Plaintiff writes, "In violation of the First, and Eighth Amendments to the U.S. Constitution, via the exhibition of deliberate indifference, to Plaintiff's long standing p[sy]chological aversion to double celling, which is a municipal policy, a wicked device, which continues at Pelican Bay State Prison." Id. at 25, ¶ 134. Paragraph 180 states, "Basically, before Plaintiff had even realized it, defendants Stevenson, Parry, Melton, and Getsep[], were conspiring to intimidate, and retaliate because of Plaintiff's appealing Pelican Bay's overly restrictive mail policies, in violation of the First Amendment, and to hold Plaintiff incommunicado, in the continuum of the conspiracy to violate RICO implemented by the Kern Valley defendants." Id. at 38, ¶ 180.

Ultimately, the Complaint's failure to comply with Rule 8 prevents this Court (and Defendants) from deciphering the factual and legal basis for each defendants' alleged liability. Hence, the Complaint must be dismissed.

**B. THE COMPLAINT SUFFERS FROM NUMEROUS DEFICIENCIES WARRANTING DISMISSAL**

In addition to the overarching failure to comply with Rule 8, the Complaint suffers from numerous other deficiencies which warrant dismissal. The Court briefly addresses each deficiency below.

**(1) The Complaint Does Not Unambiguously Identify Defendants**

A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief . . . ." McHenry, 84 F.3d at 1178. "[A]llegations in a complaint . . . must . . . give fair notice and . . . enable the opposing party to defend itself effectively." Starr, 652 F.3d at 1216.

Here, Plaintiff does not list defendants Sgt. Thomas and Getsep in the section of the Complaint identifying the parties, but Plaintiff appears to name these two additional defendants in the body of the Complaint. See Compl. ¶¶ 168, 170, 180, 187. The Court is therefore unable to determine whether Plaintiff intended to name Sgt. Thomas and Getsep as defendants. See McHenry, 84 F.3d at 1178

("Despite all the pages, requiring a great deal of time for perusal, one cannot determine from the complaint who is being sued, [and] for what relief . . ."). If Plaintiff wishes to include more defendants, he must clarify exactly who the defendants are – at a minimum, the section of the Complaint identifying the parties and body of the Complaint must agree.

In addition, Plaintiff claims "[a]ll defendants are sued in their individual capacities" in the section for relief. Compl. at 2, ¶ 4. However, in a footnote under the section of for relief at the end of the Complaint, Plaintiff states for the first time, "[t]o the extent possible, and/or necessary, Plaintiff seeks relief from defenda[n]ts Allis[]on, Kernan, and Ducart, in their **Official Capacities**, for the return of all of Plaintiff's Personal and Legal Property, as they are the only such persons, whom can order such relief, and they are the persons from which injunctive relief can be obtained."[3] Id. at 47 n.1 (emphasis in original). This footnote at the end of the Complaint does not "give fair notice" enabling the "opposing part[ies] to defend [themselves] effectively." Starr, 652 F.3d at 1216. If Plaintiff wishes to sue any defendants in their official capacities,[4] Plaintiff must clarify this in the section of the Complaint identifying the parties to ensure fair notice and enable defendants to defend themselves effectively. See id.

///
///
///

---

[3] Plaintiff sues defendant Kernan, the Secretary of the California Department of Corrections and Rehabilitations, defendant Allison, the Director of Institutions, and defendant Ducart, the warden at Pelican Bay State Prison, for implementing a racketeering scheme. Dkt. 1, Compl. ¶¶ 28-29, 60, 201.

[4] Furthermore, Plaintiff's reference to "official capacity" appears to conflate his RICO claim with injunctive relief in claims brought under 42 U.S.C. § 1983. However, suing a government official in his official capacity is the equivalent of suing the government, which cannot form the requisite criminal intent to be sued under RICO. Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996) ("[G]overnment entities are incapable of forming [the] malicious intent necessary to support a RICO action.").

11

### (2) The Complaint Contains No Factual Allegations Against Defendants Ta'amillo, Beard, Pfeiffer, Williams, Howe, Benafield, and Davis

A plaintiff must present facts showing individual defendants were directly and personally involved in inflicting the alleged constitutional injury. See Iqbal, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff's complaint must contain enough facts to "state a claim to relief that is plausible on its face," allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

Here, Plaintiff lists defendants Ta'amillo, Beard, Pfeiffer, Williams, Howe, Benafield, and Davis in the section of the Complaint identifying the parties. Compl. ¶¶ 12, 25-26, 45-46, 48, 51, 61. However, Plaintiff appears to omit *any* facts regarding these defendants in the body of the Complaint. If Plaintiff wishes to include claims against defendants Ta'amillo, Beard, Pfeiffer, Williams, Howe, Benafield, and Davis, Plaintiff must specifically allege facts linking defendants Ta'amillo, Beard, Pfeiffer, Williams, Howe, Benafield, and Davis to any direct or personal involvement in any claim. Iqbal, 556 U.S. at 676.

### (3) The Claims Against Defendant Ohta Are Barred by Absolute Judicial Immunity

Judges have absolute immunity to suits for monetary damages for their judicial acts. "This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ." Pierson v. Ray, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ("[A judge] should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption."). Absolute judicial immunity exists "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." Bradley v. Fisher, 80 U.S. (1. Wall.) 335, 20 L. Ed. 646 (1871); see also Mireles v. Waco, 502

U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) (upholding absolute immunity for a judge that allegedly ordered excessive force be used in arresting a suspect).

Here, Plaintiff sues defendant Los Angeles Superior Court Judge Sam Ohta in his individual capacity for judicial acts. Compl., ¶¶ 5, 84, 106, 110, 114-15, 117, 120, 123-125, 141, 143, 149, 165, 205, 208. The Complaint fails to allege facts showing that Judge Ohta took nonjudicial actions against him, or that Judge Ohta's judicial actions were taken in complete absence of all jurisdiction. See Meek v. Cty. of Riverside, 183 F.3d 962, 965 (9th Cir. 1999) ("A judge is not deprived of immunity because he takes actions which are in error, are done maliciously, or are in excess of his authority."); Ashelman v. Pop, 793 F.2d 1072, 1075-76, 1078 (9th Cir. 1986) ("As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies."). Hence, the claims against Judge Ohta are barred by judicial immunity and must be dismissed.

### (4) The Claims Against Defendant Mendelsohn Are Barred by Absolute Quasi-Judicial Immunity

Judicial immunity extends to non-judicial officials performing quasi-judicial functions. See Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999) ("Absolute immunity extends to agency officials when they preside over hearings, initiate agency adjudication, or otherwise perform functions analogous to judges and prosecutors."). "The Supreme Court has recognized that individuals, when performing functions that are judicial in nature, or who have a sufficiently close nexus to the adjudicative process, are entitled to a grant of absolute quasi-judicial immunity." In re Castillo, 297 F.3d 940, 948 (9th Cir. 2002).

Here, Plaintiff appears to sue defendant Mendelsohn based on his response to Plaintiff "fil[ing] a State Bar Complaint against Bestard," where defendant Mendelsohn "forward[ed] to Plaintiff Mail Fraud cover-up letters, to the effect that Bestard do[es] not have to forward Plaintiff his case files, and do[es] not have to keep Plaintiff informed as to the status of his case." Compl. at 30, ¶ 154. In the

13

section of the Complaint identifying the parties, Plaintiff identifies defendant Mendelsohn as "Joshua D. Mendelsohn, Esq., State Bar of California, 845 South Figueroa Street, Los Angeles, CA 90017." Id. at 4, ¶ 24. To the extent Plaintiff sues defendant Mendelsohn in his capacity as an investigator or adjudicator working on behalf of the California State Bar,[5] Plaintiff's claims are barred. State Bar judges and prosecutors are entitled to quasi-judicial immunity in their performance of functions similar to judges and prosecutors in a setting like that of a court. Hirsh v. Justices of the Supreme Court of the State of Cal., 67 F.3d 708, 715 (9th Cir. 1995) (per curiam). Plaintiff's claims against defendant Mendelsohn appear to be based solely on his review or evaluation of Plaintiff's State Bar complaint. Hence, to the extent Plaintiff sues defendant Mendelsohn as a State Bar adjudicator, the claims against defendant Mendelsohn are barred by quasi-judicial immunity and must be dismissed.

### (5) The Claims Against Defendants Anteley, Hill, and Irvi Are Barred by Absolute Prosecutorial Immunity

"Prosecutors are absolutely immune for quasi-judicial activities taken within the scope of their authority." Ashelman, 793 F.2d at 1078. A government attorney has absolute immunity for taking action that only a legal representative could take. See, e.g., Butz v. Economou, 438 U.S. 478, 480, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978) (finding absolute immunity for "functions analogous to those of a prosecutor"); Imbler v. Pachtman, 424 U.S. 409, 410, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (finding absolute immunity for "activities . . . intimately associated with the judicial phase of the criminal process"). "[A]cts undertaken by a prosecutor 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' are entitled to

---

[5] A search of the California State Bar website, however, reveals that a Joshua David Mendelsohn is not an employee of the California State Bar. No search on the California State Bar website resulted in a "Joshua D. Mendelsohn" working for the California State Bar in an investigative or adjudicative role.

14

the protections of absolute immunity." Milstein v. Cooley, 257 F.3d 1004, 1008 (9th Cir. 2001). Notably, "[t]his immunity covers the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." Id.

Here, Plaintiff sues defendants Anteley, Hill, and Irvi, who are Deputy Attorneys General, in their individual capacities. Compl. ¶¶ 23, 55, 72, 84, 86, 94, 109, 132, 142, 203-05. The allegations against each concern actions taken in their roles as advocates for the State. Hence, the claims against defendants Anteley, Hill, and Irvi are barred by prosecutorial immunity and must be dismissed.

### (6) Any Challenge to Plaintiff's Underlying Criminal Conviction Must Be Brought in a Habeas Action and/or Is Barred by the Rooker-Feldman Doctrine

The exclusive remedy for a prisoner seeking "immediate release or a speedier release" from custody is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973); Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 681 (9th Cir. 1984). In addition, under the Rooker-Feldman doctrine, a federal district court has no authority to review the final determinations of a state court in judicial proceedings. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). The doctrine, thus, "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004).

Here, Plaintiff makes frequent and numerous allegations regarding the actions allegedly taken by Defendants, including, the investigators, prosecutors, defense attorneys, and judges involved in his criminal case. Plaintiff claims Defendants are motivated by a desire to prevent him from proving his innocence in the underlying criminal case and hence, prevent him from recovering monetary

damages for "unjust incarceration." Compl. at 7. As discussed in Section IV.A., the Complaint's failure to comply with Rule 8 renders it largely incomprehensible. Nonetheless, to the extent Plaintiff challenges his underlying conviction, any such challenge must be brought in a habeas petition.[6] Additionally, to the extent a finding in favor of Plaintiff in the instant action requires a determination that the jury's verdict and/or subsequent state court decisions in Plaintiff's underlying criminal case were wrong, and that numerous Defendants conspired to bring about those results, such claims are barred under the Rooker-Feldman doctrine.

### (7) The Complaint Fails to State a RICO Claim Against Defendants Leyva, Bowen, Ostrander, Fitzpatrick, Denny, Barton, Kernan, Allison, Sullivan, Wincewicz, Melton, Voong, Veldez, Gonzales, Bramucci, Ducart, and Parry

The RICO statute provides a civil remedy for acts involving racketeering or the collection of debt. See 18 U.S.C. § 1692. Only those acts described in § 1961(1) may form the basis for a racketeering claim. See 18 U.S.C. § 1961(1). In addition to outlawing substantive offenses, Section 1962(d) prohibits conspiracies which violate any of RICO's substantive provisions. Section 1962(d) provides, in full, that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." In order to sustain a conspiracy claim, plaintiffs must allege either that the defendant agreed to violate one of RICO's substantive provisions, or that the defendant himself committed two predicate acts of racketeering. Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000).

Here, the Complaint fails to allege defendants Leyva, Bowen, Ostrander, Fitzpatrick, Denny, Barton, Kernan, Allison, Sullivan, Wincewicz, Melton, Voong,

---

[6] The Court notes Plaintiff's pending habeas proceedings in this Court which, in fact, challenge his underlying conviction. Rhodes v. Preiffer, CV 14-7687-JGB (KK) (C.D. Cal. Oct. 3, 2014).

Veldez, Gonzales, Bramucci, Ducart, and Parry (1) agreed to violate one of RICO's substantive provisions, or (2) committed two predicate acts of racketeering. Hence, the claims against Defendants Leyva, Bowen, Ostrander, Fitzpatrick, Denny, Barton, Kernan, Allison, Sullivan, Wincewicz, Melton, Voong, Veldez, Gonzales, Bramucci, Ducart, and Parry must be dismissed.

## V.
## LEAVE TO FILE A FIRST AMENDED COMPLAINT

For the foregoing reasons, the Complaint is subject to dismissal. While the Court is skeptical that Plaintiff can remedy the deficiencies set forth above, the Court will grant Plaintiff leave to amend. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1. Plaintiff may file a First Amended Complaint to attempt to cure the deficiency discussed above. **The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.**

If Plaintiff chooses to file a First Amended Complaint, Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the Complaint. In addition, the First Amended Complaint must be complete without reference to the Complaint or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. Id. Because the Court grants

Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

In amending the Complaint, Plaintiff must state each of his claims separately and for each claim should identify "clearly and precisely" and briefly the legal basis and the facts underlying it. See Bautista, 216 F.3d at 841. Specifically, Plaintiff should succinctly identify when the alleged harms were committed, who caused the alleged harms, and what actions were committed by each alleged wrongdoer.

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (quoting DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); see also Ferdik, 963 F.2d at 1261. Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

**Plaintiff is explicitly cautioned that failure to timely file a First Amended Complaint will result in this action being dismissed with prejudice for failure to state a claim, prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

///
///
///
///
///
///

2. Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a).  **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use.**

Dated: November 13, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge